**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

HAROLD SPENCER WILLIAMS,

        Petitioner,

v.                                        Case Number: 06-CV-15262

JAN E. TROMBLEY,

        Respondent.

_____/

**OPINION AND ORDER
(1) DENYING PETITIONER'S "PETITION FOR A WRIT OF HABEAS CORPUS," AND
(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

        Petitioner Harold Spencer Williams, a state inmate currently incarcerated at the

Macomb Correctional Facility in New Haven, Michigan, filed a _pro se_ application for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, Petitioner

challenges his convictions and sentences for (1) assault with intent to commit murder,

Mich. Comp. Laws § 750.83; (2) felony firearm, Mich. Comp. Laws § 750.227b; and (3)

two counts of carrying a concealed weapon, Mich. Comp. Laws § 750.227.  Before his

trial began, Petitioner pleaded guilty to discharge of a firearm in a dwelling, Mich. Comp.

Laws § 750.234b, and another count of felony firearm.  For the reasons stated, the court

will deny the petition for a writ of habeas corpus.  The court also declines to issue

Petitioner a certificate of appealability.

**I.  BACKGROUND**

        This case arises from an attack on Petitioner's brother, Bradford Williams, that

took place in Royal Oak, Michigan, on November 18, 1999, in the brother's home. The

evidence presented established that Petitioner, in order to gain entrance to his brother's

home, told him that their father had died, saying "Jim's dead, they're trying to get ahold

(sic) of you, the phone must not be working."  (Trial Tr. vol. II, 156, Jul. 31, 2000.)

Having been admitted to the home, Petitioner pulled out a gun and attacked his brother

with no apparent provocation. His brother's forehead was fractured, he suffered a gash

on the side of his face, and he had a "tangential gunshot wound that never entered the

peritoneal cavity" – the bullet went through his chest, out the other side, and lodged in

his arm.  At trial, the prosecution theorized that Petitioner attacked and shot his brother

because of a family feud over their father's physical care and money. Contrary to the

ruse perpetrated by Petitioner, the father was not deceased at that time. A death

certificate entered into evidence established that the father died some six months later

in late May.

Witness Margaret Elrod, a neighbor to Bradford and Colleen Williams, testified

that during the week prior to the shooting, while she was taking her son to school, she

saw a black and orange Suburban truck parked across the street from her house.  Ms.

Elrod testified that she was always aware of her surroundings because her husband

was a corrections officer, and it registered with her that the vehicle did not "belong" in

the neighborhood.  (Trial Tr. vol. II, 41, July 31, 2000.)  She said that when she returned

from dropping her son off at school, the Suburban was gone.  According to Ms. Elrod,

later that day, she saw the same Suburban being driven down her street at a very slow

pace.

Ms. Elrod testified that, the next day, she saw Petitioner pounding on the front

door of the Williams's house.  No one came to the door.  Ms. Elrod said that she again

2

saw the Suburban being driven very slowly down the street.  She later went to the Williams's house and told Colleen Williams what she had seen.  Ms. Elrod identified Petitioner as the driver of the Suburban.

Colleen Williams testified that she had a conversation with Ms. Elrod on November 17, 1999.  Mrs. Williams said that based on that conversation she became alarmed.  She said the person Ms. Elrod described matched Petitioner's description. Further, Mrs. Williams revealed that about a year before the incident, Petitioner and her husband had a disagreement about their father's health and money.  She said that after the argument her husband did not see or hear from Petitioner for almost one year. According to Ms. Williams, on or around November 18, 1999, she became aware that Petitioner and his wife were selling their house and moving to Canada.  She said that after she told her husband about the conversation that she had with Ms. Elrod, he drove over to Petitioner's house, which was only two miles from their house, but other people had moved in and were living there.

Mrs. Williams testified that on the day in question she awakened at 4:47 a.m. to the sound of knocking on the front door.  She alerted her husband and the two of them walked to the door; when her husband said that it was his brother, Hal, Mrs. Williams went back upstairs.  Mrs. Williams subsequently overheard Petitioner tell her husband that their father had died and that they needed to make funeral arrangements.  She did not hear any arguing, but she subsequently heard a pop, which she said was a gun. She then heard her husband say, "[w]hy me, Hal?"  (Trial Tr. vol. II, 72, July 31, 2000.) Mrs. Williams testified that she then heard four more pops, and, after the last one, heard the front screen door slam shut.  She said she then heard her husband scream,

3

"[s]omebody help me please."  (Trial Tr. vol. II, 73, July 31, 2000.)  Mrs. Williams made

her way into the kitchen telephone and called 911.  She noticed that the kitchen table

had been overturned, and she saw holes in the kitchen wall and ceiling.

When questioned about Bradford's relationship with Petitioner, Mrs. Williams

testified that their relationship seemed strained because of the differences in opinion

regarding the care of their father; her husband was guardian and had power of attorney.

Mrs. Williams said she believed the shooting occurred because of a dispute over her

father-in-law's money.

Royal Oak Police Officer Paul Duncan testified that he was dispatched to the

scene.  When Duncan arrived, he found Bradford Williams with blood on his clothing

and body.  Duncan said that Bradford told him on the scene that his brother had shot

him.  Duncan said he then saw Petitioner attempting to get into his vehicle and leave

the scene, whereupon Duncan ordered Petitioner to stop and show his hands.  Duncan

later found two live rounds from a .45 caliber gun and two spent shell casings, one .45

caliber and one .25 caliber.

Officer Doug Maciejewski, another Royal Oak police officer, arrived at the scene

after Duncan, and ordered Petitioner out of his vehicle.  Maciejewski said that he asked

Petitioner if he had any weapons, to which Petitioner replied, "it's over there and he

motioned with his head across the street."  (Trial Tr. vol. II, 134, July 31, 2000.)

Maciejewski found a small .25 caliber automatic gun in Petitioner's jacket pocket; the

gun was loaded and the safety was off.  He also said that he found a cylindrical piece of

steel in Petitioner's coat, a small flashlight and an empty magazine from a gun larger

than the one he found in Petitioner's pocket.

4

Bradford Williams testified that when Petitioner knocked on his door on the morning in question he told him that their father had died and that he had been trying to reach him but that his phone was not working (Bradford later confirmed that his phone was working).  When Petitioner said that he had recently moved and had a new telephone number, Bradford went to retrieve a pad of paper and a pen. At that point his son emerged from a bedroom, so he left the paper and pen on the kitchen table and steered the boy back to the bedroom.  As he was walking back toward the kitchen, Petitioner came toward him, coming so close that he believed their bellies may have touched.  Bradford moved sideways to get out of the way, and as he did he heard a pop and saw a flash.  Bradford said that he stumbled and saw his brother holding a gun, with two hands, pointed at his head.  He bumped into a TV tray, picked it up and put it in front of himself as a shield.

He said he saw the gun coming toward him, initially pointed in the direction of his legs.  Petitioner raised the gun until it was pointed at his head.  He said he then heard a tremendous bang, staggered back and felt blood on his lips.  When he saw his brother attempting to cock the gun again, he ran out the front door.  Bradford ran to his neighbor's house to get help, but left before anyone answered the door because he saw Petitioner coming out of his front door.  He ran down the street and circled around to the house directly behind his house.  Before he was able to get to his own front door, he again saw his brother, who pursued him.  Bradford hid behind a car, and heard his brother say, "you should have let me have that account."  (Trial Tr. vol. II, 177, July 31, 2000.)  Bradford further testified that when Petitioner apparently saw that he was hurt, he said , "[y]ou're hurt, let's go back to the house."  (Trial Tr. vol. II, 182, July 31, 2000.)

5

Bradford said that he suffered six bumps on his head and a long gash down the side of his face.  There were bullet holes in his abdomen and arm; the bullet went through his chest, out the other side, and lodged in his arm.  Bradford said he thought he was hit in the forehead with the gun.  The relevant medical records were admitted into evidence.  Regarding the bank account that Petitioner referred to during the assault, Bradford testified that he believed it to be an account that he used to pay his father's bills.  It was held in both his name and his father's name, and Petitioner was not on the account.  According to Bradford, his father had considered putting his brother's name on the account, but he asked his father to reconsider, which he did.  Bradford further testified that he and his father had another account from which Petitioner was able to withdraw about $24,000, which he used to open a new account in Petitioner's and the father's names.  Neither he nor the father had given Petitioner permission to withdraw the money or to open a separate account, and Bradford was able to retrieve the money and start a new account in a different bank.  Bradford said that he and Petitioner argued about that issue in January of 1999, and that was the last time he spoke to his brother before the morning of the incident.

Bradford testified that he was the patient advocate for his father and had power of attorney over his father's legal affairs.  Bradford believed there was friction between him and his brother as a result of this relationship.

Deputy John Jacob, from the Oakland County Sheriff's Crime Laboratory Division, testified that at the scene he saw weapons in the grass, blood near the car and front of the house, holes in the living room walls, and fired cartridge casings on the ground.  He concluded that there were three shots fired inside the house.  Jacob said

6

that the weapon fired at Bradford was discharged somewhere between chest to waist high.

Michigan State Police Officer Michael Thomas, of the firearm identification division at the Sterling Heights Crime Laboratory, testified as an expert and identified bullets and a spent cartridge casing which were fired from the recovered .45 caliber semi-automatic firearm. He also identified as fired from the recovered .25 caliber semi-automatic weapon the .25 caliber cartridges and the metal jacketed bullet. Thomas also examined the jacket worn by Petitioner on the night of the assault, and he determined that the hole in the jacket was consistent with having been produced by the discharge of a firearm.

Royal Oak Detective John Kowalski testified that he was also called to the scene. He spoke to Ms. Elrod, who told him that she had seen Petitioner in the neighborhood the day before the incident in question. Kowalski testified that he contacted the Michigan State Police about the weapons found at or near the crime scene, or on Petitioner's person. The police records of the guns involved in the crime were admitted into evidence; neither the .25 nor the .45 caliber guns were registered in Petitioner's name. Testimony also revealed that Petitioner's home in Royal Oak had been sold on or about October 27, 1999, and that he and his wife had purchased a home in Canada; the closing date on the Canada house was scheduled for November 19, 1999, the day after the shooting.

The defense called witnesses, beginning with Officer Robert Spellman, another Royal Oak Police Officer, who said that he interviewed Bradford Williams. He testified that Bradford told him that Petitioner produced a silver handgun and fired at least three

7

shots.  Spellman also testified that Bradford told him that he was struck by the gun.

Officer Barry Gale, another Royal Oak Police Officer, interviewed Bradford at the

hospital, where Bradford told him that he did not see the gun that shot him.  Gale further

testified that Bradford told him that he had power of attorney over his father's accounts

and that Petitioner had taken money out of an account and put it into his own account.

The next witness for the defense was Ann Williams, Petitioner's wife.  She

acknowledged that the relationship between the brothers was tense, but that her

husband would never intend to kill Bradford.  She also testified that Petitioner would not

have mishandled guns.

Petitioner did not testify and placed his waiver on the record.  He said it was his

decision not to testify:

> MS. SIMMONS: And it was your decision not to testify?
>
> MR. HAROLD WILLIAMS: Yes.

(Trial Tr. vol. V, 181, Aug. 4, 2000.)

On August 7, 2000, the jury convicted Petitioner of the three crimes listed above.

On September 14, 2002, the trial judge sentenced him to (1) two concurrent terms of

two-years imprisonment for the felony-firearm convictions, (2) one concurrent term of

eighteen-and-one-half-years to fifty-years imprisonment for the assault with intent to

commit murder conviction, (3) two to five-years imprisonment for each of the carrying a

concealed weapon convictions, and (4) one to four-years imprisonment for the

discharge of a firearm conviction.

Petitioner filed his appeal as of right in the Michigan Court of Appeals, raising the

following claims:

8

I.    [Petitioner] was denied the effective assistance of
      counsel by: (1) not seeking an interlocutory appeal,
      (2) conceding [Petitioner's] guilt, (3) not allowing
      [Petitioner] to testify, and (4) failing to call treating
      physicians.

II.   Trial court erred by admitting evidence of a weapon
      stolen thirteen years earlier.

III.  [Petitioner] was denied a fair trial by the prosecutor's
      improper closing remarks.

IV.   Verdict was against the great weight of evidence.

V.    Trial court committed numerous errors at sentencing.

VI.   [Petitioner's] sentence is disproportionate.

VII.  [Petitioner's] Fourteenth Amendment right to due
      process was violated by [the] [State's] deliberate use
      of perjured testimony in order to obtain a conviction.

On May 20, 2003, the Michigan Court of Appeals affirmed Petitioner's

convictions.  *People v. Williams*, No. 230566, 2003 WL 21186628 (Mich. Ct. App. May

20, 2003).  Petitioner filed a timely application for leave to appeal in the Michigan

Supreme Court, raising the same seven claims as raised in the Court of Appeals, and

added the following:

I.    [Petitioner] was denied his Sixth and Fourteenth
      Amendment rights to the effective assistance of
      appellate counsel: (1) when the issue of PRV 7 was
      not raised; and (2) when the ineffective assistance of
      trial counsel issue was not supported by affidavits or
      depositions of the doctors who examined the
      prosecution's key witness, Bradford Williams.

II.   Due process and equal protection rights under federal
      and state constitutions as well as [Mich. Comp. Laws]
      § 769.31(d) were violated by the court assessing
      twenty points for PRV 7 when [Petitioner] had not
      prior criminal record.

9

III.    Cumulative effect of trial errors require that
        [Petitioner] be granted a new trial.

The Michigan Supreme Court denied the application on April 30, 2004.  *People v. Williams*, 679 N.W.2d 75 (Mich. 2004).  Petitioner's motion for reconsideration was denied on July 29, 2004.  *People v. Williams*, 683 N.W.2d 676 (Mich. 2004).

Subsequently, Petitioner filed a motion for relief from judgment pursuant to Mich. Ct. R. 6.500 *et. seq.*, in the Oakland County Circuit Court, raising the following claims:

I.    [Petitioner's] rights to due process, equal protection
      and a jury trial under [the United States Constitution
      Amendments] V, VI, and XIV, and [the] Michigan
      Const. 1963, art. 1, 2, 16, and 20 were violated by the
      trial court's failure to instruct [the] jury, *sua sponte*, on
      [the] defense theory of accident and lesser included
      offenses.

II.   [Petitioner] was deprived of due process by counsel's
      failure to raise constitutional issues which adversely
      affected [Petitioner's] right to appeal, and right to
      effective assistance of counsel on appeal under [the
      United States Constitution Amendments] V, VI, and
      XIV.

III.  Federal and state constitutional rights to the effective
      assistance of counsel under the Sixth Amendment
      were denied [] by (1) counsel's failure to request jury
      instructions for accident defense and lesser included
      offenses of assault with intent to murder, (2) failure to
      object when those instructions were not given *sua
      sponte*, and (3) failure to object to improper religious
      remarks.

On November 10, 2005, the trial court denied Petitioner's motion for relief from judgment.  *People v. Williams*, No. 00-171038-FC (Oakland County Circuit Court, Nov. 10, 2005).  Petitioner then filed applications for leave to appeal from that decision in both the Michigan Court of Appeals and the Michigan Supreme Court, which were

10

denied. *People v. Williams*, No. 266800 (Mich. Ct. App. Jun. 9, 2006); *People v. Williams*, 722 N.W.2d 837 (Mich. 2006).

On November 28, 2006, Petitioner filed his petition for a writ of habeas corpus in this court. Petitioner seeks the issuance of a writ of habeas corpus on the following grounds:

> I.  [Petitioner] was denied the effective assistance of counsel by: (1) not seeking an interlocutory appeal, (2) failing to call treating physicians (*res gestae* witnesses with exculpatory evidence), (3) counsel's failure to request jury instructions for accident defense and lesser included offenses of assault with intent to murder and failure to object when those instructions were not given *sua sponte*, and (4) failure to object to improper religious remarks.
>
> II.  [Petitioner was] denied a fair trial and Fourteenth Amendment right[s] to due process by the prosecutor's improper remarks and tactics: (1) prosecutor shifted [the] burden of proof to [Petitioner] and improperly abrogated [his] Fifth Amendment rights to remain silent, (2) religious arguments by [the] prosecutor [during] closing [arguments], and (3) [the] use of perjured testimony.
>
> III.  Verdict was against the great weight of [the] evidence.
>
> IV.  Trial court committed numerous errors at sentencing
>
> V.  [Petitioner's] sentence is disproportionate.
>
> VI.  [Petitioner] was denied his Sixth and Fourteenth Amendment rights to the effective assistance of appellate counsel: (1) when the issue of PRV 7 was not raised, (2) when the ineffective assistance of trial counsel issue was not supported by affidavits or depositions of the six doctors who examined [the] prosecution's key witness, (3) when counsel failed to investigate and raise jury instructions issues, and (4) when counsel failed to include ineffective assistance of counsel for failure to object to [the] prosecutor's

improper religious arguments [during] closing [arguments].

VII.   [Petitioner's] rights to due process, equal protection and a jury trial under [the United States Constitution Amendments] V, VI, and XIV, and [the] Michigan Const. 1963, art. 1, 2, 16, and 20 were violated by the trial court's failure to instruct [the] jury, *sua sponte*, on [the] defense theory of accident and lesser included offenses.

VIII.   The cumulative effect of error requires that Petitioner be granted a new trial.

## II. DISCUSSION

### A. Standard Of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state-court decisions and states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs

12

when the state court identifies the correct legal principle from a Supreme Court decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### B. Claim I – Ineffective Assistance of Counsel Claims

Petitioner first claims that trial counsel was ineffective for (1) not seeking an interlocutory appeal, (2) failing to call the treating physicians, (3) failing to request jury instructions for an accident defense and lesser included offenses of assault with intent to murder and failure to object when those instructions were not given *sua sponte*, and (4) failing to object to improper religious remarks. Only Petitioner's first two claims are preserved for habeas review. Petitioner's remaining claims are barred from review because they were not presented to both the state court of appeals and the state supreme court. *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.").

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two-prong test. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective

13

assistance of counsel.  First, a petitioner must prove that counsel's performance was
deficient.  This requires a showing that counsel made errors so serious that he or she
was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id.* at 687.
Second, a petitioner must establish that the deficient performance prejudiced the
defense.  Counsel's errors must have been so serious that they deprived the petitioner
of a fair trial or appeal.  *Id.*

In order to prove deficient performance, a petitioner must identify acts that were
"outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at
690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.*
at 689.  This court must recognize that counsel is strongly presumed to have rendered
adequate assistance and made all significant decisions in the exercise of reasonable
professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that
"there is a reasonable probability that, but for counsel's unprofessional errors, the result
of the proceeding would have been different"  *Id.* at 694.  A reasonable probability is
one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, [t]he
benchmark for judging any claim of ineffectiveness must be whether counsel's conduct
so undermined the proper functioning of the adversarial process that the [proceeding]
cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d
1302, 1311-12 (6th Cir.1996).  Under *Strickland*, a court must presume that decisions
by counsel as to whether to call or question witnesses are matters of trial strategy.  *See*
*Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The Michigan Court of Appeals, the last court to issue a reasoned decision

regarding this claim, stated in pertinent part:

> To establish ineffective assistance of counsel, a defendant
> must show that his counsel's performance fell below an
> objective standard of reasonableness under prevailing
> professional norms, and that, but for counsel's error or
> errors, it is reasonably probable that the outcome of the
> proceedings would have been different. *People v. Toma*,
> 462 Mich. 281, 302-303; 613 N.W.2d 694 (2000). Effective
> assistance of counsel is presumed, and the defendant bears
> a heavy burden of proving otherwise. *Id.* at 302. Here,
> because defendant failed to make a testimonial record in the
> trial court in connection with a motion for a new trial or an
> evidentiary hearing, this Court's review of this
> issue is limited to mistakes apparent on the record. *People
> v. Sabin (On Second Remand)*, 242 Mich. App 656,
> 658-659; 620 N.W.2d 19 (2000).
>
> We find no basis for reversal. With regard to counsel's
> failure to pursue an interlocutory appeal, we cannot conclude
> that this failure affected the outcome of the case. *Toma*,
> *supra* at 302-303. Indeed, had such an appeal been
> pursued, we would have reviewed the circuit court's decision
> de novo to determine whether the district court abused its
> discretion in binding defendant over for trial. *People v.
> Libbett*, 251 Mich. App 353, 357; 650 N.W.2d 407 (2002).
> The abuse of discretion standard is narrow; for an abuse of
> discretion to be present, the result of the
> proceedings must have been so violative of fact and logic
> that it evidences a defiance of judgment or an exercise of
> passion or bias. *Id.*
>
> Here, the district court was required to bind defendant over
> for trial if the prosecutor presented competent evidence
> constituting probable cause to believe that defendant
> committed assault with intent to murder. *People v. Northey*,
> 231 Mich. App 568, 574; 591 N.W.2d 227 (1998). The
> court's "determination that sufficient probable cause exists
> will not be disturbed unless the determination is wholly
> unjustified by the record." *Id.* "Probable cause requires a
> reasonable belief that the evidence presented during the
> preliminary examination is consistent with defendant's guilt."
> *Id.* at 575. "Circumstantial evidence, coupled with those

15

inferences arising therefrom, is sufficient to establish
probable cause . . . ." *Id.*

Assault with intent to murder requires (1) an assault; (2) with
the actual intent to kill; (3) that, if successful, would make the
killing murder. *People v. McRunels*, 237 Mich. App 168,
181; 603 N.W.2d 95 (1999). "Circumstantial evidence and
the reasonable inferences that arise from the evidence can
constitute satisfactory proof of the elements of the crime."
*Id.* "The intent to kill may be proved by inference from any
facts in evidence." *Id.* "Because of the difficulty of proving
an actor's state of mind, minimal circumstantial evidence is
sufficient." *Id.*

Here, the victim, Bradford Williams (defendant's brother),
testified at the preliminary hearing concerning his past
conflicts with defendant and the fact that they were not on
speaking terms. He also explained that defendant appeared
on his doorstep in the early morning hours and lied about
their father's death to obtain entry into the house. He
testified that once inside the house, defendant fired a gun at
him numerous times, hitting him at least once. Williams
stated that defendant chased him, eventually indicating that
he was upset over issues concerning a bank account. Given
this evidence, even had certain medical records been
presented to the district court, it still would have had
probable cause to bind defendant over on the assault with
intent to murder charge. Therefore, any interlocutory appeal
would have been futile. Counsel is not required to advocate
a meritless position. *People v. Snider*, 239 Mich. App 393,
425; 608 N.W.2d 502 (2000).

*Williams*, No. 230566, 2003 WL 21186628, at 1-2.

Regarding Petitioner's claim that trial counsel was ineffective for failing to call the

treating physicians who treated Bradford after the incident in question, the Michigan

Court of Appeals stated in pertinent part:

With regard to counsel's failure to present the physicians
who treated Williams after the incident, we again find no
error requiring reversal. Defendant contends that the
testimony in question would have shown that Williams lied
about his injuries. He also contends that the testimony

16

would have explained the medical records and supported the
defense theory that this was an accidental shooting.

Again, counsel's decision not to present the evidence must
be presumed to be trial strategy. Moreover, "[i]neffective
assistance of counsel can take the form of failure to call
witnesses only if the failure deprives the defendant of a
substantial defense." *People v. Hyland*, 212 Mich. App 701,
710; 538 N.W.2d 465 (1995), *vacated in part on other
[grounds]* 453 Mich. 902 (1996). "A defense is substantial if
it might have made a difference in the outcome of the trial."
*Id.* Here, the medical records pertaining to Williams'[s]
injuries were admitted into evidence. These records were
not overly technical. According to a brief filed by defendant,
they indicated that Williams suffered a gunshot wound that
did not puncture vital organs. The records indicated that the
brothers had an argument and that Williams had been shot
in the abdomen. The records further revealed that Williams
had been hit in the head with the butt of a gun. While
defendant speculates that the treating physicians would
have further helped his case, the record does not support
this claim. Because the jury had the actual medical records,
defendant was not deprived of a substantial defense due to
counsel's failure to also present the treating physicians.
Reversal is unwarranted.

*Williams*, No. 230566, 2003 WL 21186628 at 3.

The court finds that the Michigan Court of Appeals did not unreasonably decide

these claims. First, regarding the interlocutory appeal claim, the Court of Appeals

correctly held that Petitioner could not demonstrate substantial harm, because no

matter what the outcome of an interlocutory appeal, he would have faced trial. There

was sufficient evidence presented at the preliminary examination to establish probable

cause of assault with intent to murder; Petitioner brought at least one gun with him to

his brother's house, he lied to obtain access to the house, and he fired numerous shots

at his brother, without any apparent provocation, hitting him at least once. Second,

regarding counsel's failure to present the physicians, the Court of Appeals correctly

17

analyzed the issue: "[b]ecause the jury had the actual medical records, [Petitioner] was not deprived of a substantial defense due to counsel's failure to also present the treating physicians." *Williams*, No. 230566, 2003 WL 21186628. Against that backdrop, this court concludes that the Michigan Court of Appeals's decision regarding these claims was not contrary to, or an unreasonable application of, clearly established federal law so as to entitle Petitioner to habeas relief.

Regarding Petitioner's remaining ineffective assistance of counsel claims – failing to request jury instructions for an accident defense and lesser included offenses of assault with intent to murder, failing to object when those instructions were not given sua sponte, and failing to object to improper religious remarks made by the prosecutor – those claims are procedurally defaulted.

A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 must first exhaust all state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*,17 F.3d 155,160 (6th Cir. 1994). A Michigan prisoner must raise each issue he seeks to present in a federal habeas proceeding to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. *See Mohn v. Bock*, 208 F.2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160 (citing *Darr v. Burford*, 339 U.S. 200, 218-19 (1950)).

18

Petitioner first raised the remaining claims for ineffective assistance of counsel in a motion for relief from judgment under Mich. Ct. R. 6.500 *et. seq.*  The motion was denied for failing to establish entitlement to relief under Mich. Ct. R. 6.508(D).[1]  It is well-

---

[1]  The rule establishes, in relevant part, that:

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

. . .

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
(a) good cause for failure to raise such grounds on appeal or in the prior motion, and
(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
(I) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal;

. . .

(iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;
(iv) in the case of a challenge to the sentence, the sentence is invalid.

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

Mich. Ct. R. 6.508(D).

19

established in this circuit that the procedural bar set forth in Mich. Ct. R. 6.508(D) is an adequate and independent ground to foreclose review of federal claims. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). In *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit considered the form used by the state appellate courts and found it presented a sufficient explanation that the ruling was based on failure to comply with a state procedural rule. *See also McFarland v. Yukins*, 356 F.3d 688, 697-98 (6th Cir. 2004).

A state prisoner's habeas claims are procedurally defaulted if the prisoner has failed to comply with an independent and adequate state procedural rule, thus causing default of the prisoner's federal claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This can occur when an individual fails to present an issue to a state appellate court upon the only opportunity to do so. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Rust*, 17 F.3d at 160. In *Coleman*, the United States Supreme Court held that if the decision of the last state court to which a habeas petitioner presented his federal claims fairly appeared to rest primarily on federal law, or to be interwoven with federal law, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition. *Id.* at 735. The Court went on to note:

> This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims [citation omitted].

20

*Id.* at 735 n. 1.

The United States Court of Appeals for the Sixth Circuit employs a four-part test to determine whether a state procedural default bars federal habeas review. The inquiry is whether:

> (1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief.

*Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (citing *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998)); *see also Alexander v. Smith*, No. 06-1569, 2009 WL 426261 (6th Cir. Feb. 20, 2009).

Here, the procedural rule relied upon by the state appellate courts to bar review of these issue was firmly established and regularly applied at the time of Petitioner's default.  Petitioner thus procedurally defaulted these habeas claims.  A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 753; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  The cause and prejudice test should be applied to all occasions where a procedural default bars state litigation of a constitutional claim.  *Coleman*, 501 U.S. at 750.

Petitioner contends that his appellate counsel was ineffective in raising the claims in his direct appeal, and therefore, he argues, he has established the necessary cause

21

and prejudice to excuse the procedural default.  *See also*, Petitioner's Claim VI, *infra*.

Petitioner also argues that the court's failure to review these claims would result in a

fundamental miscarriage of justice.  To the extent that Petitioner attempts to establish

cause to excuse his procedural default by claiming that his appellate counsel was

ineffective for failing to raise his claims in his direct appeal, he does not do so.  Attorney

error will not constitute adequate cause to excuse a procedural default unless it

amounts to constitutionally ineffective assistance of counsel under the criteria

established in *Strickland*, 466 U.S. 466 U.S. at 687.

The mere failure to raise a claim, even if it is meritorious on appeal, does not

constitute ineffective assistance of appellate counsel sufficient to establish cause to

excuse a procedural default.  The United States Supreme Court, in *Smith v. Robbins*,

528 U.S. 259, 288 (2000), stated, among other things:

> In *Jones v. Barnes*, 463 U.S. 745 (1983) [parallel citations
> omitted], we held that appellate counsel who filed a merits
> brief need not (and should not) raise every nonfrivolous
> claim, but rather may select from among them in order to
> maximize the likelihood of success on appeal.
> Notwithstanding *Barnes*, it is still possible to bring a
> *Strickland* claim based on counsel's failure to raise a
> particular claim, but it is difficult to demonstrate that counsel
> was incompetent. [*See*], *e.g.*, *Gray v. Greer*, 800 F.2d 644,
> 646 ([7th Cir.] 1986) ("Generally, only when ignored issues
> are clearly stronger than those presented, will the
> presumption of effective assistance of counsel be
> overcome")

*See also McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) (where claim was not

"dead bang winner," the petitioner's appellate counsel's failure to raise it on direct

appeal did not constitute cause to excuse procedural default).

In this case, the record reveals that various issues were raised in Petitioner's direct appeal, but that Petitioner's convictions were affirmed.  Petitioner fails to demonstrate that the issues that were allegedly ignored by his appellate counsel in his direct appeal were clearly stronger than those that were presented, and he has failed to overcome the strong presumption that his counsel was competent.  Since Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test.  *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).

Petitioner has also not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Murray v. Carrier*, 477 U.S. at 496.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  His assertion that his habeas claims have merit does not establish a miscarriage of justice.  These claims are thus barred by procedural default and do not warrant federal habeas relief.

### C.  Claim II – Prosecutorial Misconduct

Next, Petitioner claims that the prosecutor committed various acts of misconduct: (1) by shifting the burden of proof, (2) impinging on his Fifth Amendment right to remain

23

silent, and (3) making a religious argument.  The Michigan Court of Appeals addressed

the first two issues under the plain error doctrine because trial counsel failed to object.

Although the court of appeals addressed the prosecutor's improper reference to the

biblical story of Cain and Abel, Petitioner failed to present that issue to the state

supreme court, and thus, all prosecutorial misconduct claims are procedurally defaulted.

Therefore, this court may review those claims only if Petitioner demonstrates cause and

prejudice.  *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 423-24 (6th Cir. 2003).

The only possible cause would be the allegation that trial counsel was ineffective

for failing to object to the arguments.  Petitioner presented an ineffective assistance of

trial counsel claim to the court of appeals in his appeal of right, but that claim was based

on different factual predicates, as stated above.  As such, Petitioner may not, as a

matter of law, now raise this argument in an effort to demonstrate cause. *Jacobs v.

Mohr*, 265 F.3d 407, 415-18 (6th Cir. 2001).  (*See* section B, *supra*. at 19.)  The court

therefore finds that Petitioner is not entitled to habeas relief regarding his prosecutorial

misconduct claims.

### D.  Claim III – Verdict Against The Great Weight Of The Evidence Claim

Petitioner next claims that the verdict was against the great weight of the

evidence, and therefore, there was insufficient evidence to sustain his convictions.  A

federal court lacks power to grant habeas corpus relief on the ground that a state

conviction is against the great weight of the evidence.  *Thomas v. McLemore*, 2001 WL

561216, *5 (E.D. Mich. Mar. 30, 2001) (citing *Young v. Kemp*, 760 F.2d 1097, 1105

(11th Cir. 1985)).  The appropriate inquiry on federal habeas corpus review is not

whether the verdict went against the great weight of the evidence, but whether sufficient

24

evidence was presented to support the conviction. *Id.* Therefore, the court shall consider only whether the verdict was supported by sufficient evidence.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Pursuant to 28 U.S.C. § 2254(d)(1), this court must determine whether the state court applied the correct standard and whether that application was contrary to or an unreasonable application of Supreme Court precedent. This determination requires that the court afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 518 U.S. 1027 (1996).

The Michigan Court of Appeals analyzed this issue as follows:

> Next, defendant argues that the evidence was insufficient to support the assault with intent to murder conviction because the prosecution failed to prove that defendant had the specific intent to kill. In reviewing the sufficiency of the evidence, this Court "must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v. Hoffman*, 225 Mich. App. 103, 111; 570 N.W.2d 146 (1997); *see also People v. Wolfe*, 440 Mich. 508, 515; 489 N.W.2d 748 (1992), *amended* 441 Mich. 1201 (1992). All conflicts with regard to the evidence must be resolved in favor of the prosecution. *People v. Terry*, 224 Mich. App. 447, 452; 569 N.W.2d 641 (1997). Further, this Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *Id.*; *Wolfe*, *supra* at 514-515. As noted, assault with intent to murder requires

25

(1) an assault; (2) with an actual intent to kill; (3) that, if successful, would make the killing murder. [*People v. McRunels*, 603 N.W.2d 95, 102 (Mich. Ct. App. 1999). "Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime." *Id.* "The intent to kill may be proved by inference from any facts in evidence." *Id.* "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *Id.*

Here, the circumstantial evidence, viewed in the light most favorable to the prosecution, was sufficient to establish defendant's intent to kill. The evidence demonstrated that the brothers had had an ongoing feud over the care of their father. Several days before the shooting, defendant had surveiled [sic] the area in which the shooting occurred. He subsequently appeared in the early morning hours, hit Williams in the head with a piece of steel, shot at Williams multiple times, and then chased after him.

Moreover, the evidence established that defendant used a newly-purchased vehicle (i.e., one not likely to be linked to him) to surveil the area, and he used a gun not registered to him. Moreover, he was due to close on a new house in Canada the day after the shooting.

All of the above facts, viewed in a light most favorable to the prosecution, could have permitted the jury to conclude that defendant intended to kill his brother. Reversal is unwarranted.

*Williams*, No. 230566, 2003 WL 21186628 at 5-6.

The court finds that the court of appeals correctly determined that there was sufficient evidence at trial to support Petitioner's convictions. The circumstances presented prior to the assault established that Petitioner planned his attack. Petitioner was stalking his brother. He used a ruse to gain entrance to his brother's house, telling him that their father had died and that he was unable to reach him because there was an apparent problem with his phone. The death certificate established that his father

26

did not die until six months later.  Evidence was also presented that Petitioner purchased a Suburban three days before the assault and did not register the vehicle. And, although Petitioner did not speak to his brother in almost a year, he nevertheless went to his house, after stalking him, with two loaded but unregistered guns.

The court therefore finds that there was sufficient – indeed, significant – evidence presented to support the conviction, *Thomas*, 2001 WL 561216 at 5, and the record is not so devoid of evidentiary support that a due process issue is raised.  Petitioner failed to raise a claim of federal-constitutional magnitude and therefore is not entitled to habeas corpus relief for this claim.

### E.  Claims IV and V – Sentencing Claims

Next, Petitioner argues that he is entitled to re-sentencing because various errors occurred in the scoring of his sentencing guidelines.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings.  *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (same).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process.  See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, Petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

27

Petitioner also alleges that his sentence is disproportionately severe to his offense. Because the United States Constitution contains no strict proportionality guarantee, *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a claim that the sentencing court violated Michigan's principles of proportionality implicates only state law. *See Lunsford v. Hofbauer*, 52 F.3d 325 (6th Cir. 1995) (citing *Harmelin*, 501 U.S. at 965); *Welch*, 49 F.Supp.2d at 1009.

To the extent that Petitioner claims an Eighth Amendment violation, which prohibits cruel and unusual punishment, the Eighth Amendment "does not require strict proportionality between crime and sentence." *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003). The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Harmelin*, 501 U.S. at 1001. Therefore, federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without a possibility of parole. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *Seeger v. Straub*, 29 F.Supp.2d 385, 392 (E.D. Mich. 1998). Against that backdrop, the court finds that Petitioner is not entitled to habeas relief regarding his proportionality claim.

### F.  Claims VI and VII – Ineffective Assistance of Appellate Counsel Claim and Jury Instruction Claim

In claims VI and VII, Petitioner alleges that his appellate counsel was ineffective for (1) failing to raise the issue of [prior record variable] 7, (2) failing to raise the issue of ineffective assistance of trial counsel – regarding the six doctors who examined his brother,  regarding trial counsel's failure to investigate and failure to object to the jury instructions, and regarding trial counsel's failure to object to the prosecutor's improper

28

religious arguments made during closing arguments.  These claims were presented to the state courts during Petitioner's motion for relief from judgment and subsequent appeals; both state appellate courts denied relief with respect to all claims by using the common form order stating that the appeal was denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *Williams*, No. 266800 (Mich. Ct. App. June 9, 2006); *Williams*, 722 N.W.2d at 837.  As a result, Respondent contends that these claims were not properly exhausted and are now barred by procedural default.  (*See* section B, *supra.* at 19, for discussion of procedural default.)

Where a state court denied relief on independent and adequate state procedural grounds, as the state courts did here, a prisoner may obtain habeas review only jif he can establish "cause and prejudice" or that the failure to review the claims would result in a miscarriage of justice.  *Strickler v. Greene*, 527 U.S. 263 (1999).  Petitioner alleges ineffective assistance of appellate counsel as his "cause and prejudice."  In order for Petitioner's claim of ineffective assistance of appellate counsel to serve as cause for defaulting his claims, he must show that his appellate counsel's failure to raise the claims rose to the level of a constitutional violation under *Strickland*, 466 U.S. at 687-88. Petitioner is required to show that his appellate counsel was so thoroughly ineffective that defeat was "snatched from the jaws of victory."  *United States v. Morrow*, 977 F.2d 222, 299 (6th Cir. 1992) (*en banc*), *cert. denied*, 508 U.S. 975 (1993); *West*, 73 F.3d at 94.  Thus, in order to decide whether Petitioner can present these claims, the court must decide whether there is a reasonable probability that the claims would have prevailed at the time appellate counsel failed to raise them.  *See McFarland*, 356 F.3d at 699.  If there is a reasonable probability that Petitioner would have prevailed on

29

appeal had the claims been raised, the court must consider whether the claims were so compelling that appellate counsel's failure to raise them constituted ineffective assistance of counsel that would excuse Petitioner's default.  *Id.* at 699-700.

In this case, Petitioner has failed to demonstrate that his appellate attorney's inadequacy deprived him of victory.  The record reveals that various issues were raised in Petitioner's direct appeal, but that Petitioner's convictions were affirmed.  Petitioner fails to demonstrate that the issues that were allegedly ignored by his appellate counsel in his direct appeal were clearly stronger than those that were presented, and he has failed to overcome the strong presumption that his counsel was competent.  "A brief that raises every colorable issue runs the risk of burying good arguments – those that, in the words of the great advocate John W. Davis, 'go for the jugular' [] – in a verbal mound made up of strong and weak contentions."  *Jones*, 463 U.S. at 753; *see also McMeans*, 228 F.3d at 682.

Here, the court notes that Petitioner still maintains that many of his appeal of right claims, previously raised by his appellate counsel, entitle him to habeas relief. Petitioner may not, with consistency, argue that his appellate counsel did not raise substantial claims.  The court finds that appellate counsel's actions in this case, in choosing to exclude the claims raised in the motion for relief from judgment in favor of others, was a strategic decision and does not constitute ineffective assistance.  Since Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test.  *Coe*, 161 F.3d at 329.

Petitioner has also not established that a fundamental miscarriage of justice has

30

occurred.  *See Schlup*, 513 U.S. at 326-27; *Murray*, 477 U.S. at 496. "'[A]ctual

innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S.

at 624.  Petitioner has made no such showing.  His assertion that his habeas claims

have merit does not establish a miscarriage of justice.  Petitioner's claims VI and VII are

thus barred by procedural default and do not warrant federal habeas relief.

### G.  Claim VIII – Cumulative Error Claim

Petitioner's final claim is that the cumulative effect of the above-stated trial errors

denied him his due process rights to a fair trial.  Petitioner is not entitled to habeas relief

on a cumulative error theory.  "[T]he Supreme Court has not held that distinct

constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291

F.3d 416, 447, (6th Cir. 2002), *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th

Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).  The court therefore finds that Petitioner is

not entitled to habeas relief regarding his cumulative effect error claim.

### H.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal

the denial of a habeas petition for relief from either a state or federal conviction.  28

U.S.C. §§ 2253(c)(1)(A), (B).  A district court, in its discretion, may decide whether to

issue a COA at the time the court rules on a petition for a writ of habeas corpus or may

wait until a notice of appeal is filed to make such a determination.  *See Castro v. United

States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth*., 105 F.3d

1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521

U.S. 320 (1997).  In denying the habeas petition, the court has studied the case record

and the relevant law, and concludes that, as a result, it is presently in the best position

31

to decide whether to issue a COA.  *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105

F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will

have an intimate knowledge of both the record and the relevant law,'" the district judge

is, at that point, often best able to determine whether to issue the COA.)).

　　　　A court may issue a COA "only if the applicant has made a substantial showing

of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must "sho[w]

that reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S.

473, 484 (2000).  In this case, the court concludes that jurists of reason would not find

the court's assessment of the constitutional claims (I through V, and VIII) debatable or

wrong, or that the court's ruling that Petitioner's claims (VI and VII) are barred by

procedural default debatable.  The court thus declines to issue Petitioner a certificate of

appealability.

## IV.  CONCLUSION

　　　　For the reasons stated above, IT IS ORDERED that Petitioner's "Petition for Writ

of Habeas Corpus" [Dkt. # 1] is DENIED.

　　　　IT IS FURTHER ORDERED that the court DECLINES to grant Petitioner a

certificate of appealability.

　　　　　　　　　　　　　　　　　　　s/Robert H. Cleland　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　ROBERT H. CLELAND
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated:  June 30, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2009, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522